UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

**Clearview AI, Inc.,**

        **Petitioner/Plaintiff**

        **v.**

**Investigative Consultants, Inc. and**        Case No. 1:25-cv-00049

**Donald Berlin,**

        **Respondents/Defendants**
_____


**MEMORANDUM OF LAW IN OPPOSITION TO CLEARVIEW'S
MOTION TO CONFIRM AND IN SUPPORT OF ICI'S AND MR. BERLIN'S MOTION TO
VACATE, MODIFY OR CORRECT THE AWARD IN PART AND TO CONFIRM THE AWARD**


        John P. Dean (JD0278)
        **THE OSTER LAW FIRM**
        1320 19th Street, N.W., Suite 800
        Washington, D.C. 20036
        (202) 725-8110 (p)
        (202) 747-5862 (f)
        johndean8@aol.com

        *Counsel to Respondents/Defendants*

**TABLE OF CONTENTS**

**BACKGROUND**……………………………………………………...………………..1

**ARGUMENT**……………………………………………………………..……………….2

    **I.**      **THE FEDERAL ARBITRATION ACT GOVERNS ENFORCEMENT OF THE AWARD**……………………………………………..….2

    **II.**     **THIS COURT SHOULD CORRECT THE AWARD BY ELIMINATING MR. BERLIN'S PERSONAL LIABILITY FOR ATTORNEY FEES**…………………………………………………….4

    **III.**    **THE AWARD OF PREJUDGMENT INTEREST FROM THE BEGINNING OF THE CONTRACT SHOULD BE VACATED, MODIFIED, OR CORRECTED**…………………………………………...7

    **IV.**    **THE FEDERAL POST-JUDGMENT INTEREST RATE SHOULD GOVERN**……………………………………………………….…9

    **IV.**    **THE COURT SHOULD CONFIRM THE PORTIONS OF THE AWARD REJECTING THE REMAINDER OF CLEARVIEW'S CLAIMS**……………………………………………………………9

**CONCLUSION**……………………………………………………………………...10

Defendants/Respondents Investigative Consultants, Inc. ("ICI") and Donald Berlin respectfully submit this combined Memorandum of Law: (1) opposing the petition of Plaintiff/Petitioner Clearview AI, Inc. ("Clearview") for confirmation of the arbitration award at issue (ECF 1-2); and (2) supporting their separate motion, filed herewith, to vacate, modify, or correct that award in part and to confirm that award in part.

## BACKGROUND

Clearview and ICI signed a contract on July 30, 2019 requiring ICI to deliver arrest records and accompanying photographs from all 50 states. (ECF 1-5. ) Clearview intended to use that data to augment its facial recognition business. The contract required ICI to provide information on individuals arrested for crimes and join that data with pictures of each such individual. (*Id*., at 2.) Clearview would then be able to use its facial recognition software to identify arrestees by their image alone. The contract contained an exclusivity clause, prohibiting ICI from selling a similar dataset to any private company offering facial recognition technology for three years. (*Id.,* at 3.)

The contract called for delivery of approximately 690 million arrest records and 390 million photos. (*Id.,* at 2.) It called for initial payment of $825,000 for the data purchase and $48,000 for programming costs, a total of $873,000. (*Id.*)It also called for Clearview to pay $45,000 for updates to the data every six months or at a schedule of Clearview's choosing. (Id.) Clearview paid ICI $873,000 on or about August 1, 2019.

Donald Berlin is the President and CEO of ICI. In February 2020, he delivered hard drives with data required by the contract to Clearview. During performance of the contract, Clearview was subject to state and private enforcement litigation on privacy grounds, limiting the scope of its potential customers. Concerned about that litigation filed against it, Clearview did not immediately make any use of the data. It copied the data several times over but never had its staff examine or analyze the data until June 2021, more than a year after delivery. (ECF 1-6 at 25.) At that time, it claimed

the data did not meet the contract's specifications in various ways, including that the required number of records was not provided. ICI provided additional information to Clearview via Dropbox in September 2021, but Clearview remained dissatisfied.

The contract contains an arbitration clause requiring any controversy or claim arising out of the agreement to be settled by arbitration through the American Arbitration Association ("AAA") before a single arbitrator in New York City. (ECF 1-5 at 3.) It also provides that it shall be governed by New York law, but is silent about the law pursuant to which it is to be enforced. (*Id.*) On June 12, 2023, Clearview filed an arbitration demand with the AAA against both ICI and Mr. Berlin. (Exhibit 1 to this Memorandum.) ICI and Mr. Berlin answered that demand on June 30, 2023, denying all liability. (Exhibit 3 to this Memorandum.) ICI also asserted a counterclaim for its lost opportunity to provide updates to the data, and asked for damages of $45,000. (*Id.,* at 7.)

Clearview filed an amended demand on October 18, 2023, (Exhibit 2 to this Memorandum) and the arbitration proceeded with that demand as Clearview's operative pleading

The Arbitrator held a hearing on August 26-28, 2024 and issued his award on November 7, 2024. (ECF 1-6.) Although the award required ICI to pay over a million dollars to Clearview, the Arbitrator rejected many of Clearview's claims. The Arbitrator held that Mr. Berlin was not personally liable for any of Clearview's claims, (*id.,* at 38-40) and rejected Clearview's claims that: (1) ICI defrauded Clearview (*id.,* at 34-36); (2) ICI breached the contract's exclusivity clause (*id.,* at 33-34); (3) ICI was liable for millions of dollars in consequential and punitive damages. (*Id.,* at 31-33.) The Arbitrator did conclude that ICI breached the contract and awarded damages against ICI of $873,000, the contract's full purchase price. (*Id.,* at 25-33.) He also denied ICI's counterclaim in its entirety. (*Id.,* at 40.)

The Arbitrator awarded prejudgment interest on the $873,000 award at the rate of 9%, based on the rate established by NYCPLR § 5001(b). The award requires the interest to be calculated from August 1, 2009, the date of payment, even though Clearview did not ascertain any breach of the contract until almost two years after that date. (*Id.,* at 43.) The award also requires that post-award interest should accrue at the 9% rate specified in § 5004(a) of the CPLR.

On attorney fees and costs, the Arbitrator awarded Clearview approximately $193,000, a portion of its claimed fees associated with the breach of contract claim, to be paid by ICI. (*Id.,* at 43.)He additionally awarded approximately $64,000 in attorney fees and costs, jointly and severally against both ICI and Mr. Berlin, to compensate Clearview for prevailing on ICI's counterclaim. (*Id.*)

On November 27, 2024, ICI and Mr. Berlin moved to modify the award in two respects. First, they argued that computing pre-award interest from shortly after the date the contract was signed was contrary to New York law, which requires prejudgment interest only from the date the breach was ascertained, and that Clearview did not ascertain any breach until approximately two

3

years after the signing of the contract. Second, because Mr. Berlin did not file or join in any counterclaim he cannot be liable for Clearview's attorney fees in defending the counterclaim filed only by ICI. (Exhibit 4 to this Memorandum.) The Arbitrator denied that motion on December 19, 2024. (ECF 1-7.)

Clearview filed a petition to confirm the award in Supreme Court, New York County, on December 23, 2024. (ECF 1-2.) ICI and Mr. Berlin filed a timely notice of removal to this Court on January 3, 2025. (ECF 1) ICI and Mr. Berlin now seek to vacate, modify, or correct certain aspects of the Award and to confirm the portions of the award rejecting certain of Clearview's claims.

## ARGUMENT

**I.    THE FEDERAL ARBITRATION ACT GOVERNS ENFORCEMENT OF THE AWARD.**

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA") applies to all contracts affecting interstate commerce. *See, e.g., Citizens Bank v. Alafabco,* 539 U.S. 52 (2003). The contract at issue here, between a corporation based in New York and a corporation based in the District of Columbia, for the delivery of data from all 50 states, satisfies that definition. The FAA provides detailed standards for the enforcement of arbitration awards to which it applies. See 9 U.S.C. §§ 9-11.  Those standards are applicable here.

The parties' agreement that the contract "shall be governed by the law of the state of New York applicable to contracts made in and performed entirely therein" (ECF 1-5 at 3) does not displace the enforcement provisions of the FAA. Under New York law, if the FAA is applicable to an arbitration agreement, then the FAA's enforcement provisions apply unless the agreement explicitly states that **enforcement** of the agreement is governed by New York law. A choice of law provision that does not expressly refer to enforcement of the agreement is insufficient to

4

invoke New York law. *Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp.,* 4 N.Y. 3d 247, 253, 826 N.E.2d 802, 806, 793 N.Y.S. 2d 831, 835 (2005) (construction contract provided it should be "governed by the law of the place where the Project is performed," *i.e.,* New York; because that language "did not express an intent to have New York law govern [the] agreement's enforcement," New York law on enforcement of the agreement did not apply.) *See Park Lane IBS, LLC v. Unbnd Group Pty Ltd.,* 2024 WL 4123515 at *3 (S.D.N.Y. 9/2/24) (parties' motions to confirm and to partially vacate an arbitration award are governed by the FAA because the contract's choice of law clause lacks language concerning enforcement, citing *Diamond*); *See also Penrod Management Corp. v Stewart's Mobile Concepts,* 2008 WL 463720 at *2 (S.D.N.Y. 2/19/08).

The parties' agreement is silent as to the law governing its enforcement. As in *Park Lane,* therefore, "[b]ecause the Agreement did not specify that New York arbitral law governs matters of enforcement, the FAA governs this proceeding." 2024 WL 4123515 at *3. To be sure, on many issues there is no conflict between the FAA and New York law. *Id.* But to the extent any conflict exists, the FAA must provide the rule of decision in this case.

### II. THIS COURT SHOULD CORRECT THE AWARD BY ELIMINATING MR. BERLIN'S PERSONAL LIABILITY FOR ATTORNEY FEES.

Section 11(a) of the FAA, 9 U.S.C. § 11(a), empowers this Court to issue an order "modifying or correcting" an arbitration award "[w]here the arbitrators have awarded upon a matter not submitted to them."[1] Mr. Berlin did not "submit" a counterclaim in the arbitration. The only counterclaim asserted was ICI's, which sought damages for Clearview's non-payment of

---

[1] New York law has an identical provision. NYCPLR § 7511(c)(2).

5

$45,000 "for updates to the data" as provided in the contract. (Exhibit 3 to this Memorandum at 7.)

Furthermore, the Arbitrator ruled that Mr. Berlin "is not personally liable" for any of Clearview's claims. (ECF 1-6 at 42.) Yet he held Mr. Berlin liable for 25% of Clearview's attorney fees because he "lost on the counterclaim." *Id.* But Mr. Berlin did not assert a counterclaim. The counterclaim set forth in ICI's and Mr. Berlin's Answer filed in the arbitration reads as follows:

> 1. Respondents ICI and Mr. Berlin incorporate the preceding paragraphs of this Answer, Affirmative Defenses, and Counterclaim as if set forth herein.
>
> 2. Complainant has admitted the July 30, 2019 contract ("Contract") between Clearview and ICI is a valid, enforceable agreement.
>
> 3. Pursuant to the Terms of the Contract, Clearview had a duty to pay ICI a total of $918,000 upon ICI's performance of the agreement.
>
> 4. ICI fully performed the agreement, except to the extent Clearview refused to accept the servers with joined data. On information and belief, Clearview refused to accept the servers not because of any failure of performance on ICI's part, but because Clearview was involved in litigation and Clearview and its counsel believed that acceptance of the servers would be detrimental to its defense of the pending litigation.
>
> 5. ICI remains ready, willing, and able to deliver the servers and joined data in accordance with the Contract.
>
> 6. Notwithstanding ICI's complete performance of the Contract (except to the extent prevented by Clearview, ICI received only $873,000, less than the full contract price (Demand Ex. B).
>
> 7. Clearview owes ICI $45,000, plus prejudgment interest.
>
> **WHEREFORE, ICI respectfully requests the arbitrator award ICI $45,000, prejudgment interest, attorneys' fees, and such other relief as the arbitrator deems just and appropriate.**

Exhibit 3 to this Memorandum at 7. (Emphasis added.)

The counterclaim seeks an award of damages only to ICI, based solely on ICI's rights under the contract. Mr. Berlin asserted no personal rights under the contract and sought nothing in the

6

counterclaim. Paragraph 1 of the counterclaim is not a substantive allegation; it simply repeats ICI's and Mr. Berlin's denials of the allegations in the Demand. It does not transform ICI's counterclaim into Mr. Berlin's counterclaim, because the remainder of the counterclaim asserts only factual allegations of ICI and seeks relief only for ICI.

The Arbitrator justified the award against Mr. Berlin by noting that Mr. Berlin "participated in the proceedings." (ECF 1-6 at 42.) But he did so as a corporate officer of ICI, as the Arbitrator recognized, as well as to defend himself successfully against Clearview's baseless allegations that he was personally liable for the claims Clearview asserted. That does not mean he asserted a personal right to the damages ICI sought in its counterclaim. The Arbitrator also asserted that Mr. Berlin participated in the events that led him to issue an order imposing certain costs on Respondents in the arbitration. (*Id.*) But his order noted that Clearview "did not quantify its costs" related to Respondents' alleged failure to comply with certain orders and he issued no order imposing those costs on anyone. (*Id.*) Clearview, therefore, did not "submit" those costs for decision to the Arbitrator, and there was no basis for deciding that 25% of Clearview's entire costs and fees for this proceeding was attributable to non-compliance with any orders.

In denying Mr. Berlin's motion to modify the Award, the Arbitrator repeated his assertion that Mr. Berlin's participation in the arbitration, by itself, justified the imposition of attorney fees upon him. (ECF 1-7 at 6) As set forth above, however, Mr. Berlin's mere "participation" in the case does not mean that he "submitted" a counterclaim that seeks relief only for ICI. His "participation" as a witness does not render him a counterclaimant or take precedence over the Arbitrator's decision that Mr. Berlin was not personally liable for any of Clearview's claims.

Although the Arbitrator also looked for new grounds to justify the award, that effort was a failure. He cited the AAA's Rule 49(d)(ii), which says that an arbitrator may award fees "in such

7

amounts as the arbitrator determines is appropriate." (ECF 1-7 at 7.) An AAA rule, however, does not give an arbitrator the authority to issue an award contravening the FAA. In particular, nothing in that rule overcomes § 11(b) of the FAA, which allows this Court to modify or correct an award whenever arbitrators "have awarded upon a matter not submitted to them." [2]

The Arbitrator also cited a few submissions in which counsel for Mr. Berlin inadvertently referred to both Mr. Berlin and ICI as counterclaimants. But those scattered references are insufficient to contradict the plain language of the counterclaim itself, which unequivocally states that only ICI is the party asserting the counterclaim.

Because Mr. Berlin did not submit a counterclaim, he should not be liable for Clearview's fees associated with defending that counterclaim. The award, therefore should be modified to remove Mr. Berlin's personal liability for any attorney fees.

### III. THE AWARD OF PREJUDGMENT INTEREST FROM THE BEGINNING OF THE CONTRACT SHOULD BE VACATED, MODIFIED, OR CORRECTED.

Section 11(a) of the FAA allows this Court to modify or correct an award "[w]here there was an evident material miscalculation of figures . . . ."[3] The FAA also sets out several grounds for vacating an arbitrator's award. 9 U.S.C. §10(a). "In addition to these grounds, the Second Circuit has recognized an additional judicially-created ground, namely that an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of law." *Chicago Bridge & Iron Co., N.V. v. Refineria de Cartagena, S.A.S.,* 2025 WL 71658 (S.D.N.Y. 1/10/2025) (citing *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) and *Westerbeke Corp. v. Daihatsu*

---

[2] Nor does the rule give the Arbitrator the authority to issue an award that contravenes the identical language in NYCPLR § 7511(c)(2).

[3] New York law has a similar provision. NYCPLR § 7511(c)(1).

8

*Motor Co.,* 304 F.3d 200, 208 (2d Cir. 2002)) (internal quote marks omitted.)[4] Either the Arbitrator's "material miscalculation" of the interest amount or his "manifest disregard of the law" governing the accrual of prejudgment interest is a sufficient basis for vacating the Arbitrator's award of prejudgment interest from August 1, 2019, two days after the contract was signed.

Pursuant to NYCPLR § 5001, prejudgment interest "shall be computed from the earliest date the cause of action was ascertainable." Clearview had no cause of action for breach of contract on August 1, 2019. No breach could have been ascertained until some time after February 11, 2020, when the hard drives were delivered to Clearview. It was not until June 2021 that Clearview's president, Mr. Ton-That directed Clearview's engineering team to analyze ICI's data, and it was in September 2021 that ICI delivered additional data to Clearview. No breach was ascertainable before those dates. The Arbitrator, therefore, miscalculated the amount of interest due, and the award must be corrected to remedy that miscalculation.

Alternatively, the Arbitrator manifestly disregarded the law by failing to compute the interest from the date the cause of action was ascertainable. The "manifest disregard" standard is narrow, but it is satisfied here. *See, e.g., Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 202 (2d Cir, 1998), *cert. denied* 526 U.S. 1034 (1999):

> [T]o modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.

The Arbitrator knew of the governing legal principle established in NCPLR 5001(b) because the motion to modify the award cited it. (Ex. 4 to this Memorandum at 1.) His decision denying the motion did not discuss § 5001(b) at all. In the words of *Halligan*, he "ignored it

---

[4] New York law does not recognize "manifest disregard of the law" as a ground for vacating an award. *See, e.g., Wien & Malkin, LLP v. Helmsley-Spear, Inc.,* 6 N.Y.3d 471, 480-81, 846 N.E.2d 1201, 1206-07, 813 N.Y.S. 2d 691, 696-97 (2006) (recognizing "manifest disregard of the law" as a doctrine of federal law.)

completely." 148 F.3d at 202. Instead, he relied on AAA Rule 49(d)(I), which states that an arbitrator may award interest "at such rate and from such date as the arbitrator may deem appropriate," and Rule 49(a), which permits an arbitrator "to grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." (ECF 7 at 6-7.) But the AAA has no authority to promulgate a rule in violation of applicable law. Section 5001(b) establishes the proper date for calculating prejudgment interest, and permits no modification in the name of whatever "just and equitable" result an arbitrator might prefer.

The second requirement set forth in *Halligan* is also satisfied. Section 5001(b) is "well defined, explicit, and clearly applicable to the case." 148 F.3d at 202. The CPLR establishes a clear and easily applied rule for the computation of prejudgment interest. The Arbitrator's decision to ignore that rule in the name of a supposed "just and equitable" result is a manifest disregard of that rule. Accordingly, the award should be vacated and prejudgment interest should be calculated from either June or September 2021.

### IV. THE FEDERAL POST-JUDGMENT INTEREST RATE SHOULD GOVERN.

In its proposed judgment, Clearview demands that post-judgment interest accrue at the rate of 9%, the rate specified by New York law. (ECF 8.) The Second Circuit has held, however, that the appropriate interest rate for all federal court judgments is the rate computed pursuant to 28 U.S.C. §1961, which is based on one-year Treasury yields. *Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013). Clearview, therefore is not entitled to the amount of post judgment interest it seeks.

### V. THE COURT SHOULD CONFIRM THE PORTIONS OF THE AWARD REJECTING THE REMAINDER OF CLEARVIEW'S CLAIMS.

Clearview seeks a judgment confirming the Arbitrator's award on its claim that ICI breached the contract by not delivering data conforming to the contract's specifications. The

Arbitrator, however, also ruled on four other claims brought by Clearview, rejecting them all. Specifically, he rejected Clearview's claims for breach of the contract's exclusivity provision, for fraudulent inducement, for fraudulent misrepresentation, and for unjust enrichment. He also rejected Clearview's claim for consequential damages, punitive damages and its claim that Mr. Berlin was personally liable for damages for breach of contract.

ICI and Mr. Berlin have moved for confirmation of those portions of the award. As Clearview has not moved to vacate, modify, or correct those parts of the award, we request this Court to enter judgment confirming them. 9 U.S.C. § 9 (court must confirm award if it is not modified, vacated, or corrected pursuant to 9 U.S.C. §§ 10 or 11.)

## CONCLUSION

For the reasons stated herein, ICI and Mr. Berlin respectfully request the Court to enter judgement:

1. Denying Clearview's motion for confirmation;

2. Vacating, modifying, or correcting the award to the extent it:

   a) awarded prejudgment interest from August 1, 2019; and

   b) held Mr. Berlin personally liable for a portion of Clearview's attorney fees;

3. Confirming the award in part and declaring that:

   a) Mr. Berlin is not personally liable for any breach of the contract;

   b) ICI is not liable for breach of the contract's exclusivity provision;

   c) ICI is not liable for fraudulent inducement;

   d) ICI is not liable for fraudulent misrepresentation or concealment;

   e) ICI is not liable for unjust enrichment;

   f) ICI is not liable for consequential damages; and

      g) ICI is not liable for punitive damages'

4. Awarding any post-judgment interest at the rate established by 28 U.S.C. § 1961, and not by any contrary state law;

5. Awarding ICI and Mr. Berlin their costs of this proceeding; and

6. Awarding ICI and Mr. Berlin such other and further relief as this Court deems appropriate and proper.

January 16, 2025                                      Respectfully submitted,

                                                ***/s/ John P. Dean***
John P. Dean (JD0278)
**THE OSTER LAW FIRM**
1320 19th Street, N.W., Suite 800
Washington, D.C. 20036
(202) 725-8110 (p)
(202) 747-5862 (f)
johndean8@aol.com

*Counsel to Respondents/Defendants*

13

## CERTIFICATION OF WORD COUNT

I hereby certify that this document complies with the word count limitations of Local Civil Rule 7.1(c). Based on the word count of the word-processing program used to prepare this document, I certify that it contains 3,584 words.

/s/*John P. Dean*