# CLEARVIEW AI

September, 26 2023

**Usher Winslett, Arbitrator**
**1177 Avenue of the Americas, 5th Floor**
**New York, New York**
**10036**

**RE: AAA Case No. 01-23-0002-6322 (CLEARVIEW AI, INC., Claimant, v. INVESTIGATIVE CONSULTANTS, INC., et al., Respondents. )**

Dear Mr. Winslett,

    Pursuant to Rule 33 of the Commercial Arbitration Rules of the American Arbitration Association, Clearview AI, Inc. ("Clearview") respectfully requests leave to file a motion to dismiss Claimant's Counterclaim, subject to Fed. R. Civ. P. 12(b)(6). Clearview previously submitted a letter pursuant to the schedule contained in your Draft Procedural Order Number 1 on September 14, 2023. Your subsequent ruling, delivered via email on September 14, 2023 stated that Clearview may submit a revised letter within 1 week from the date of Clearview's service of written discovery responses to the Respondent. Clearview submitted written discovery responses on September 19th, 2023. Therefore, Clearview now submits this revised pre-motion letter, which sets forth a refined summary of the arguments to be included in the motion to dismiss.

    I.    **Summary of Respondent's Counterclaim**

    ICI's allegations against Clearview are simple. Respondent's Counterclaim alleges a breach of contract, based on the allegation that Clearview breached the Termsheet agreement (the "Termsheet", found at Exhibit A to Claimant's Statement of Claim) between Clearview and Investigative Consultants, Inc. ("ICI"). Specifically, ICI alleges that Clearview breached the Termsheet by failing to pay ICI a total amount of $918,000 which, ICI claims, Clearview was obligated to pay under the Termsheet (Counterclaim Para. 2). It is not disputed that Clearview paid ICI a total of $873,000 (Counterclaim Para. 6). ICI maintains that Clearview thus came up $45,000 (the "Disputed Funds") short of the amount that it owed ICI under the Termsheet (Counterclaim Para. 7). The Termsheet states that the $45,000 price refers to the cost



99 Wall Street #5730
New York, N.Y. 10005

www.clearview.ai
info@clearview.ai

to Clearview for "updates to the data (provided every 6 months, or at the schedule of the Buyer's choosing, with the price locked in for 4 years)."

In its Answer, ICI makes various factual claims, but never alleges facts necessary to state a claim for breach of contract. Among other deficiencies, ICI was required to plead that it provided at least one update to the data 6 months after providing the original data. ICI never even attempts to plead that it provided that update. Because the Termsheet plainly required Clearview to pay $45,000 only if ICI provided that update (and satisfied other conditions), ICI fails to state a claim for breach of contract, and the Counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Respondent's Counterclaim Should Be Dismissed Because Respondent Has Failed to Adequately State a Claim

To adequately plead breach of contract, a plaintiff must allege: (1) the existence of valid agreement; (2) the agreement was fully performed by the plaintiff; (3) defendants failed to perform; and (4) damages resulted. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245-246 (2d Cir. 2000). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that relief is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

ICI alleges that Clearview breached the Termsheet by failing to pay $45,000 that it owed to ICI. However, Clearview was not even arguably required to pay the Disputed Funds to ICI under the Termsheet, and ICI has not alleged any facts that support the notion that Clearview was required to do so. ICI's single-page Counterclaim supports its allegations with only the most basic of conclusory statements, e.g.: "Pursuant to the Terms of the Contract, Clearview had a duty to pay ICI a total of $918,000 upon ICI's performance of the agreement." (Counterclaim Para. 3) "Clearview owes ICI $45,000, plus prejudgment interest." (Counterclaim Para. 7) It is well-settled law that a court "may disregard any legal conclusions" when assessing the adequacy of a pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). ICI's Counterclaim is entirely composed of "mere conclusory statements" and thus does not meet the required pleading standard. *Iqbal*, 556 U.S. at 678 (2009). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Here, ICI has neglected to even make a "formulaic recitation of the elements of a cause of action", and pleaded its case with only the briefest of conclusory statements. Therefore, it



99 Wall Street #5730
New York, N.Y. 10005

www.clearview.ai
info@clearview.ai

should be dismissed. See *Schupak Group, Inc. v. Travelers Casualty and Surety Co. of America*, 716 F.Supp.2d 262, 267 (S.D.N.Y.2010) (finding a breach of contract claim cannot be sustained by a conclusory statement that the accused breached a contract.)

### III. Respondent's Counterclaim Should be Dismissed Because Respondent Has Not Alleged a Breach of the Termsheet

ICI's Counterclaim also fails because the limited facts that ICI does allege do not amount to a breach of Clearview's obligations as established by the Termsheet. Specifically, ICI has not alleged that ICI performed any work that would have triggered a duty on Clearview's part to transfer the Disputed Funds to ICI, according to the unambiguous and plain text of the Termsheet. As noted above, to plead breach of contract, a claimant must allege, with facts, that "the defendant breached the agreement". See *Terwilliger* 245-246, see also *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (2d Dept. 2010). A breach of contract claim may be dismissed if the "'plain language' of the contract . . . fails to support the plaintiff's allegations of breach." See *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 639 (S.D.N.Y. 2020) (internal citation omitted). See also *Hatalmud v. Spellings*, 505 F.3d 139, 146 (2d Cir. 2007) (finding if "an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms."). The Termsheet states that Clearview's duty to pay the $45,000 of Disputed Funds to ICI was contingent upon "updates to the data (provided every 6 months, or at the schedule of the Buyer's choosing, with the price locked in for 4 years)." ICI is correct that the "Total cost" stated in the Termsheet is $918,000, but this Total Cost is annotated by a text box next to it which states "NB[1]: Total Upfront cost is data + programming: $873,000." While the Termsheet is a relatively brief document, its meaning is not open to dispute: Clearview was obligated to pay $873,000 at the time of ICI's initial performance, and the obligation to pay the Disputed Funds would kick in only upon the delivery of a further tranche of data, at a later date. Any further payment in the amount of $45,000 by Clearview to ICI was conditioned on a *separate, additional* update to the originally delivered data. ICI does not allege at any point in its Counterclaim that it delivered any *further* data, or performed any *further* work, that would trigger Clearview's obligation to pay the Disputed Funds, nor that it even attempted to provide such data. ICI could not make such an allegation, because no

---

[1] "Nota Bene"



99 Wall Street #5730
New York, N.Y. 10005

www.clearview.ai
info@clearview.ai

such further data was ever delivered. ICI admits that Clearview paid it the $873,000 that was owed "upfront".

ICI's Answer, and ICI's restatement of factual claims from its Answer at Para. 4 and Para. 5 of the Counterclaim, cannot serve to keep the Counterclaim alive. They do not contain any factual allegations that would, if true, trigger a duty on Clearview's part to tender the Disputed Funds to ICI. Again, nowhere in the Answer or Counterclaim does ICI state that it even attempted to produce an update to the data it allegedly initially delivered to Clearview, which delivery was required by the Termsheet for further payment. ICI's answer does allege that Clearview "breached" the Termsheet by refusing to accept ICI's servers with the *original* tranche of data, but such an alleged breach would not have any bearing or impact on ICI's duty or ability to undertake further data updates before the Disputed Funds came due. See *Comfort Inn Oceanside v. Hertz Corp.*, 2011 WL 5238658, (E.D.N.Y. Nov. 1, 2011), quoting *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.,* 111 F.3d 284, 289 (2d Cir. 1997) ("A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract.") ICI thus pleads facts which, if true (they are not) might state a defense to Clearview's breach of claim, but it does not plead facts which, if true, would state a claim for breach of contract against Clearview.

Indeed, ICI claims in its Answer that it fully performed its obligations under the Termsheet by delivering hard drives and loading data into a server. See Respondent's Answer Pg. 3-4. However, ICI does not allege that it did anything similar to provide a further update of data at Clearview's request or 6 months after the alleged initial delivery to Clearview, and does not allege any reason why it could not have done so. ICI could have placed an update to the alleged initially delivered data on a hard drive and mailed it to Clearview, or placed it on a server and notified Clearview of that fact. ICI does not allege that it did these things or anything like them. It does not even allege that it ever had the updated data. In the absence of alleged facts that would show ICI took some affirmative acts to trigger Clearview's duty to pay the Disputed Funds, ICI's Counterclaim necessarily depends on an absurd interpretation of the Termsheet, whereby ICI could do nothing, and Clearview would owe ICI money. Because ICI's Counterclaim does not plead any facts that would actually amount to a breach of the plain text of the Termsheet by Clearview, it fails as a matter of law and must be dismissed.



99 Wall Street #5730
New York, N.Y. 10005

www.clearview.ai
info@clearview.ai

IV.     <u>Conclusion</u>

It is self-evident that dismissal of Respondent's Counterclaim will dispose of a dispute at issue in this case, streamline further proceedings, and clarify the relative positions of the parties and thus facilitate effective settlement negotiations. Clearview believes that a full motion to dismiss the Counterclaim presents a relatively narrow set of issues and a straightforward and simple legal question, and thus will not represent a substantial burden to the parties in terms of cost and time. In this letter, Clearview has identified flaws in Respondent's Counterclaim that clearly merit, at minimum, the fulsome hearing of the issues that motion practice provides. Based on the foregoing, Clearview respectfully requests leave to make a dispositive motion to dismiss. We appreciate your consideration of this request.

Respectfully submitted,

*Jack Mulcaire*

**Jack Mulcaire**
General Counsel
jack@clearview.ai

Cc: Maria Ibrahim, Associate Counsel, Clearview AI    Collin Vierra, Eimer Stahl LLP



99 Wall Street #5730
New York, N.Y. 10005

www.clearview.ai
info@clearview.ai