UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

CLEARVIEW AI, INC.,
                     Petitioner,

            -v-

INVESTIGATIVE CONSULTANTS, INC.,
*et al.*,
                     Respondents.

25-CV-49 (JPO)

OPINION AND ORDER

───────────────────────────────

J. PAUL OETKEN, District Judge:

      This dispute arises from an agreement between Petitioner Clearview AI, Inc. ("Clearview") and Respondent Investigative Consultants, Inc. ("IC") involving the sharing of millions of arrest records and mugshot photos to build up Clearview's facial recognition technology. Clearview moved the New York Supreme Court, New York County, to confirm its arbitration award against IC and its CEO, Donald Berlin. Respondents removed this case to federal court and cross-moved to vacate, modify, or correct the award insofar as it (1) awarded Clearview pre-judgment interest before there was a breach of contract, and (2) held Berlin personally liable for a part of the attorney's fee award.

      For the reasons that follow, Clearview's petition to confirm is granted and Respondents' motion to vacate is denied.

**I.**      **Background**

      The following facts are undisputed and are drawn from the arbitrator's factual summaries in the final award (*see* ECF No. 1-6 ("Arb. Award")) and the order denying modification (*see* ECF No. 1-7 ("Mod. Denial")), as well as Respondents' memorandum of law in opposition to Clearview's petition to confirm and cross-motion to vacate (ECF No. 12-6 ("Resp. Mem.")) and other supporting documents attached to Respondents' notice of removal.

1

### A.     The Agreement

On July 30, 2019, Clearview and IC signed a contract to require IC to deliver "approximately 690 million arrest records and 390 million photos" to Clearview within eleven weeks. (*See* Resp. Mem. at 3; ECF No. 1-5 ("Contract") at 2.) This data would include, "at minimum[]: Name, State, Present and Past Address, SSN, DOB, Photo, Charges, Cell Phone or Home Phone, Email Address." (Mod. Denial at 3.)

The initial data purchase cost $825,000 and IC also charged $48,000 for "programming costs." (Contract at 2.) Future updates would cost $45,000 each. (*Id.*) Clearview paid the initial purchase cost and programming costs, a total of $873,000, on August 1, 2019. (Mod. Denial at 3.) IC did not deliver the required data until February 2020. (Resp. Mem. at 3.) In June 2021, Clearview "claimed the data did not meet the contract's specifications in various ways, including that the required number of records was not provided." (*Id.* at 3-4.) In October 2021, IC provided Clearview with a "Compliance Presentation," explaining how its data was sufficient under the parties' agreement. (Arb. Award ¶ 29.) However, "Clearview remained dissatisfied" with the data that was exchanged. (Resp. Mem. at 4.)

### B.     Arbitration

On or about June 12, 2023, Clearview filed an arbitration demand with the American Arbitration Association ("AAA"), naming both IC and Berlin as respondents. (Arb. Award ¶ 32.) Respondents filed a counterclaim on June 30, 2023. (*Id.*) An arbitrator was appointed on July 18, 2023 (*id.* ¶ 33), and he oversaw the briefing process over the next year (*id.* ¶¶ 33-53). The arbitrator held an evidentiary hearing from August 26 to 28, 2024, which included witness testimony from both sides. (*Id.* ¶¶ 79-82.)

The arbitrator published his final, forty-page award on November 7, 2024. (*Id.* at 44.) The award granted Clearview:

- [C]ompensatory damages of $873,000 . . . by no later than December 7, 2024.
- [I]nterest on the [compensatory damages] at the rate of 9% per annum from August 1, 2019 through the payment date.
- $193,228.39 in costs and fees . . . , plus interest, by no later than December 7, 2024.
- [I]nterest on the [costs and fees] at the rate of 9% per annum from the date of this Award through the payment date.

(*Id.* ¶ 152.)  The arbitrator also found IC and Berlin "jointly and severally liable to Clearview for $64,409.47 in costs and fees" as well as the related interest. (*Id.*)  The arbitrator denied the rest of Clearview's claims against IC and Berlin and denied Respondents' breach of contract counterclaim in full. (*See id.* ¶¶ 108, 113, 120, 124, 131, 140, 144.)

Respondents moved the arbitrator to modify his award on November 7, 2024, pursuant to Rule 52 of the AAA Commercial Arbitration Rules ("ACAR"), which permits an arbitrator to "correct any clerical, typographical, or computational errors in the award." (Mod. Denial at 2 (quoting ACAR 52).)  In their motion, Respondents first argued that it was a "computational error" that the arbitrator had awarded pre-judgment interest from the time the contract was signed rather than from the time the contract was breached. (*Id.*)  Second, Respondents argued that Berlin should not be individually liable for any part of the costs, fees, or related interest. (*Id.*)

The arbitrator issued a six-page order denying Respondents' modification motion. (*Id.* at 7.)  In response to the first argument, the arbitrator held that he "deemed that it was appropriate, just, and equitable to award Clearview interest at 9% from the date Clearview paid respondent (i.e., August 1, 2019)," and that such a calculation was not a computational error. (*Id.*)  And regarding the second argument, the arbitrator held that it was proper to hold Berlin jointly and severally liable because he was personally a counterclaimant in the arbitration. (*Id.* at 6.)

3

Further, the arbitrator reasoned, even if Berlin were correct that his counsel's use of his name as a counterclaimant was a mere clerical error, the individual liability award had been "based in part on the fact that Berlin 'participated in the proceedings in a way that increased costs and fees, including participating in the events that led to my costs order.'" (*Id.* at 7 (quoting Arb. Award ¶ 150).)

      **C.**    **Present Action**

Clearview brought this action in the New York Supreme Court, New York County, on December 23, 2024, seeking to confirm the arbitration award. (ECF No. 1-1 at 1-2.) Respondents removed the action to federal court on January 3, 2025. (ECF No. 1 at 1-2.) Respondents opposed Clearview's motion to confirm the arbitration award and cross-moved to vacate, modify, or correct the award on January 17, 2025. (ECF No. 12, Resp. Mem.) Clearview opposed the cross-motion and replied in further support of their motion to confirm on January 23, 2025 (ECF No. 18 ("Opp.")), and Respondents replied on January 30, 2025 (ECF No. 19).

On February 6, 2025, Clearview filed a letter motion seeking leave to file a sur-reply. (ECF No. 20.) Respondents opposed this motion on February 10, 2025. (ECF No. 23.)

After the above was fully briefed, Clearview filed a letter motion on March 14, 2025, asking this Court to confirm the "vast majority of the Arbitration Award" that was not contested by Respondents, noting that they were concerned about the status of the money owed to them that was not in dispute. (ECF No. 24 at 1.) Respondents opposed this motion on March 18, 2025, arguing that a letter motion was not the proper vehicle for this request, and that there was no evidence of fraud. (ECF No. 25.) Because Respondents did not articulate a good reason to delay the confirmation of the undisputed part of the award, the Court issued the partial final

judgment on March 19, 2025.  (ECF No. 26.)  Respondents appealed this judgment on March 24, 2025, and that matter is pending before the Second Circuit.  (ECF No. 27.)

## II. Legal Standard

"The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the Federal Arbitration Act."  *Kellner v. Amazon*, No. 22-734, 2023 WL 2230288, at *1 (2d Cir. Feb. 27, 2023) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013)).  "This deference promotes the 'twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation.'"  *Kolel Beth*, 729 F.3d at 103 (quoting *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009)).  Section 11 of the Federal Arbitration Act ("FAA") permits district courts to modify or correct an arbitration award in three circumstances:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.  "[A]n arbitration award may be vacated for manifest disregard of the law," which "is a judicially-created ground for vacating their arbitration award."  *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 265 (2d Cir. 1989) (quotation marks omitted).

Ultimately, "the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable

justification for the outcome reached.'" *Kolel Beth*, 729 F.3d at 103-04 (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)).

### III.     Discussion

Because the Court has already confirmed the uncontested portions of the award, the remaining issues are whether correction or vacatur is warranted for the arbitrator's award of (1) fees, costs, and related interest against Berlin in his individual capacity, and (2) pre-judgment interest for the compensatory damages against IC starting on August 1, 2019.[1] Respondents also ask this Court to reject Clearview's demand in its state court motion that a 9% rate apply to any post-judgment interest.

#### A.     Berlin's Personal Liability

Respondents first ask the Court to correct the arbitration award by eliminating the attorney's fees and costs awarded against Berlin. (Resp. Mem. at 10.) They argue that Berlin was not a party to the arbitration, at least in his individual capacity. (*Id.* at 7-8.) Thus, Respondents contend that because the award was based "upon a matter not submitted to" the arbitrator, the Court should correct the award. (*Id.* at 10 (quoting 9 U.S.C. § 11(b)).)

This argument is unavailing. This very question was submitted to the arbitrator, and the arbitrator adequately explained his reasoning for holding Berlin liable. After denying Berlin's motion to dismiss himself from the arbitration (ECF No. 1-6 at 46), the arbitrator held that "Berlin is properly a party to this arbitration, and he undoubtedly participated in the proceedings in a way that increased costs and fees, including participating in the events that led to my costs order." (Arb. Award ¶ 150.) And while the arbitrator held that Berlin was not personally liable

---

[1] Because the Court does not need to reach the issues raised in the sur-reply to decide these two questions, and Clearview has not shown that this was the extraordinary situation where additional briefing is necessary, its motion to file a sur-reply (ECF No. 20) is denied.

for Clearview's affirmative claims, he held that Berlin was jointly and severally liable to Clearview on the costs incurred by Clearview as a result of the Respondents' counterclaim. (*See id.*) The arbitrator again reached this conclusion when Respondents moved to modify the award, arguing exactly what they try to relitigate here. In his denial of Respondents' motion, the arbitrator noted that Berlin's contention that he did not bring the counterclaim in his personal capacity was unavailing because "[e]xamples of Berlin taking the position that he was a counterclaimant are plentiful."[2] (Mod. Denial at 4.) Further, the arbitrator reasoned, "even if Berlin had not been a counterclaimant," the award of costs and fees was appropriate because Berlin and his counsel's behavior had increased the costs of the arbitration. (*Id.* at 5, 7.) The arbitrator then cited his power of discretion over allocating costs and fees under ACAR 49, which states: "The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate." (*Id.* at 7.)

      The arbitrator was thus squarely ruling on a matter submitted to him, not once, but twice. And he put forward more than the minimum requirement of "barely colorable justification" for holding Berlin personally liable for a part of the costs and fees in this arbitration. *Kolel Beth*, 729 F.3d at 103. The Court thus declines to correct the award and confirms the arbitrator's award of fees and costs and relevant interest to Clearview. *See L'Objet, LLC v. Samy D. Ltd.*, No. 11-CV-3856, 2011 WL 4528297, at *3 (S.D.N.Y. Sept. 29, 2011) ("Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter.").

---

[2] Indeed, in the present action, Berlin admits that there were "a few submissions in which counsel for Mr. Berlin inadvertently referred to both Mr. Berlin and [IC] as counterclaimants." (Resp. Mem. at 10.) Inadvertent or not, it is reasonable that the arbitrator relied on Berlin's counsel's own representations that Berlin was in fact a counterclaimant.

### B.      Pre-judgment Interest on Compensatory Damages

Respondents also ask the Court to correct or vacate the arbitrator's award of pre-judgment interest beginning on August 1, 2019, because either this was a "material miscalculation" of the amount of interest owed (Resp. Mem. at 10-11 (quoting 9 U.S.C. § 11(a))) or the arbitrator "manifest[ly] disregard[ed] [the] law" (*id.* (quoting *Chicago Bridge & Iron Co. N.V. v. Refinería de Cartagena S.A.S.*, No. 23-CV-4825, 2025 WL 71658, at *11 (S.D.N.Y. Jan. 10, 2025))). Respondents argue that pre-judgment interest should be awarded from the date the contract was breached, not from the date that Clearview paid IC. (*Id.* at 11; *see* Mod. Denial at 6.)

Correction is not warranted here. First, there was no material miscalculation of pre-judgment interest owed. "Modification based on evident material miscalculation is generally limited to patently obvious mistakes on the face of the award, such as where the award would provide for double recovery." *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011). Respondents have failed to identify any scrivener's error or mathematical mistake here. Rather, they are asking the Court to correct "a substantive dispute that lays at the heart of the arbitration," which is not possible under this narrow exception that was created to correct a "careless or obvious mathematical mistake." *See id.* (quoting *Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*, No. 96-CV-6441, 2000 WL 60200, at *6 (S.D.N.Y. Jan. 25, 2000)).

Respondents have also failed to meet their "heavy burden" of showing that the arbitrator manifestly disregarded the law—that is, that this is one of "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (quotation marks omitted). "To succeed in challenging an award under the manifest disregard standard, a party must make 'a showing that the arbitrators

8

knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.'" *Seneca Nation of Indians v. New York*, 988 F.3d 618, 626 (2d Cir. 2021) (quoting *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011)). While those factors are subjective, "a finding of manifest disregard [also] requires an objective determination that the disregarded legal principle was 'well defined, explicit, and clearly applicable.'" *Id.* (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002)).

Respondents argue that the arbitrator knew of and ignored New York Civil Practice Law and Rules ("NYCPLR") Section 5001, which states that pre-judgment interest is "computed from the earliest date the cause of action was ascertainable," which they argue would be February 11, 2020, "when the hard drives were delivered to Clearview." (Resp. Mem. at 11.) Meanwhile, they contend, the arbitrator applied the AAA's rule that permits arbitrators to award "interest at such rate and from such date as the arbitrator may deem appropriate," ACAR 49(d)(i), and chose to impose that pre-judgment interest starting on August 1, 2019, when Clearview first paid IC. (*See id.*; Arb. Award ¶ 152; Mod. Denial at 6.)

Respondents can show that the arbitrator knew of NYCPLR Section 5001, because they relied on it in their motion for modification addressed to the arbitrator. (*See* ECF No. 12-5 at 1-2.) However, they fail to establish the remaining subjective and objective factors required to meet this high standard of manifest disregard. Respondents have not shown that the arbitrator would have appreciated that New York law governed the pre-judgment interest calculation rather than the AAA Rules, that NYCPLR Section 5001 was the governing law, or Section 5001 would demand a different outcome. The choice-of-law question turned on how one interprets the

agreement of the parties, *see Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 201 (1995), which states:

> This Agreement shall be governed by the law of the state of New York applicable to contracts made in and performed entirely therein, and any controversy or claim arising out of or relating to this agreement shall be settled by arbitration before a single arbitrator in New York City, New York in accordance with the rules then obtaining of the American Arbitration Association[.]

(Arb. Award ¶ 4.) It would be reasonable for the arbitrator to read this ambiguous language to mean that while contract interpretation was governed by New York state law, the rest of the arbitration, including the calculation of an interest award, was properly governed by the rules of the AAA. *Cf. T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) ("An arbitrator obviously cannot be said to disregard a law that is unclear or not clearly applicable. Thus, misapplication of an ambiguous law does not constitute manifest disregard." (quotation marks omitted)).

Further, even assuming that New York law applied to this question, Respondents have not shown that the arbitrator "willfully flouted" it. It is possible that the arbitrator interpreted NYCPLR Section 5001's "earliest date the cause of action was ascertainable" to be August 1, 2019, when IC accepted Clearview's payment despite the arbitrator's determination that IC had "no reasonable expectation that it would be able to supply Clearview with the promised data" at that time. (*See* Mod. Denial at 5.) Though the arbitrator did not cite this provision of New York law in his arbitration award, that does not mean that he did not consider it (or willfully flouted it) in his calculations. *See T.Co Metals*, 592 F.3d at 339 ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case." (quotation marks omitted)).

Because Respondents have not shown that NYCPLR Section 5001 was objectively "clearly applicable" in this situation, or that the arbitrator subjectively "appreciated that

[NYCPLR Section 5001] controlled the outcome of the disputed issue" and "willfully flouted the governing law," they have failed to show any manifest disregard for the law. *Cf. Seneca Nation*, 988 F.3d at 626.

Respondents' motion to correct or vacate the arbitrator's calculation of pre-judgment interest is therefore denied, and Clearview's motion to confirm the award is granted.

### C.  Post-Judgment Interest Rate

Respondents include a brief paragraph in their cross-motion stating that the federal post-judgment interest rate should govern rather than a rate of 9% set by both the arbitrator in this case and New York state law. (Resp. Mem. at 12.) Clearview did not address this argument in their memorandum in opposition. The Second Circuit has held that the federal rule governing post-judgment interest, 28 U.S.C. § 1961(a), is mandatory, and so an arbitrator's award, even if it is clear and unambiguous, may not override the federal rate. *See Carte Blanche*, 888 F.2d at 268-70 ("We therefore conclude that a district court judgment affirming an arbitration award is governed by [federal] statutory post-judgment interest rates." (quotation marks omitted)); *see also Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101 (2d Cir. 2004) ("[W]e believe [28 U.S.C. § 1961] is aimed mainly at precluding district courts from exercising discretion over the rate of interest or adopting an interest rate set by arbitrators . . . ."). While a growing number of circuits and district courts disagree with this reading of 28 U.S.C. § 1961 in the arbitration context and instead permit an arbitrator to override the federal rate where arbitrators "unambiguously express their intent to replace the federal rate for the post-judgment period," *see, e.g.*, *Bayer CropScience AG v. Dow Agrosciences LLC*, 680 F. App'x 985, 1000 (Fed. Cir. 2017) (collecting cases); *Tenaris S.A. v. Bolivarian Republic of Venezuela*, No. 18-CV-1371, 2020 WL 3265476, at *2 (D.D.C. June 17, 2020) (collecting cases), this Circuit has not recognized such an exception.

Respondents are also correct that New York state law's 9% post-judgment rate is inapplicable here. "[F]ederal district courts must apply the federal rate of post-judgment interest to judgments rendered in diversity actions, even when those judgments have been docketed in state court." *See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013).

The Court thus agrees with Respondents that the federal post-judgment rate, rather than the stated rate in the arbitration award or the state law rate of 9%, applies after the entry of this Opinion and Order.

### IV.  Conclusion

For the foregoing reasons, Petitioner's motion to confirm the award is GRANTED and Respondents' cross-motion to vacate the award is DENIED.

The Clerk of Court is directed to terminate the motions at Docket Numbers 12 and 20, to enter final judgment confirming the arbitration award, and to close this case.

SO ORDERED.

Dated: May 5, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge